UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                      :  10 Civ. 6298 (LAP) (JCF)
                                     :
            Plaintiff,               :      REPORT AND
                                     :   RECOMMENDATION
      - against -                    :
                                     :
DEPARTMENT OF CORRECTIONS,           :
COMMISSIONER OF THE DEPT., CHIEF     :
OF THE DEPT., WARDEN OF G.R.V.C.,    :
CAPTAIN OF HOUSING UNIT 7 x 3        :
TOUR, CAPTAIN OF HOUSING UNIT        :
3 x 11 TOUR, CAPTAIN OF HOUSING      :
UNIT 11 x 7 TOUR, P.H.S.             :
CORPORATION - PRISON HEALTH          :
SERVICES, FIRST DEPUTY WARDEN JOHN   :
AND JANE DOES ALL TOURS - 3,         :
D.O.C. LEGAL DIVISION,               :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LORETTA A. PRESKA, CHIEF JUDGE:

    Michel Toliver brings this action pursuant to 42 U.S.C. § 1983

("Section 1983") against the New York City Department of Correction

("DOC") and the DOC Legal Division, DOC Commissioner Dora Schriro,

DOC Chief of Department Larry Davis, George R. Vierno Center

("GRVC") Supervising Warden Kathleen Mulvey, three unnamed Housing

Unit Captains, Prison Health Services ("PHS"), and First Deputy

Warden John and Jane Does All Tours.  The plaintiff alleges that

while he was detained at GRVC on Rikers Island, the defendants

violated his civil rights by (1) denying him access to a

typewriter; (2) denying him adequate medical care and mental health

services; (3) denying him access to a chaplain; (4) losing his property; and (5) denying him telephone privileges.  The plaintiff now moves to amend his complaint to add the City of New York, GRVC Assistant Deputy Warden Lombardi, Captain Garcia, Captain Dunbar, and Phillip Keeplings of PHS as defendants.  Defendants DOC, PHS, Commissioner Schriro, Chief Davis, and Supervising Warden Mulvey (the "Moving Defendants") now move to dismiss the complaint.  They also oppose the plaintiff's motion to amend except to the extent that he is alleging that his constitutional rights were violated in connection with the City's alleged practice of not vouchering inmates' property upon their entry into the punitive segregation housing unit.  For the reasons that follow, I recommend that the plaintiff's motion to amend the complaint be granted in part, and that the defendants' motion to dismiss the complaint be granted.

<u>Background</u>

In his original complaint, the plaintiff claims that he suffered the following deprivations while he was incarcerated at GRVC: (1) lack of access to a working typewriter; (2) inadequate medical and mental health care services; (3) lack of access to a chaplain; (4) loss of his property; and (5) denial of telephone privileges. (Complaint ("Compl.") at 3; Addendum[1] to Compl. at

---

[1] The plaintiff has attached a two-page addendum to his Complaint in which he sets forth additional facts.  The addendum

2-3).  Specifically, Mr. Toliver alleges that the only law library
typewriter  available  to  the  approximately  100  inmates  in  his
housing  unit  was  "inoperable."   (Compl. at 3).   He also alleges
that

> P.H.S. -- Prison Health Services -- staff 7-days a week
> briskly walk by cells many times I was on the floor --
> resulting  from  my  back  injury[.]   P.H.S.  staff  would
> quickly walk by my cell and many others' cells knowing
> that  many  inmates  need  and  yell  out  to  them  to  stop  by
> the cells for meds or some adjustments made to medical
> orders[,]  emergency sick call[,]  etc. . . .  and we are
> most of the time in 11-Building are ignored.

(Compl. at 3 (ellipses in original)).   He further claims that
"P.H.S. has denied many of our serious problems -- covering up the
non-work by simply putting a 'free' newspaper on our cell door."
(Add. at 2).  Mr. Toliver also alleges that he was denied mental
health  services,  but  pleads  no  facts  to  support  this  claim.
(Compl. at 3).   The plaintiff next complains that he was denied
access to a chaplain, though his pleadings appear to relate to the
denial of chaplain services to another inmate: "Denial of access to
any chaplin [sic] even after having requested one inmate's aunt
passed away: inmate Carrion (currently in 24 cell) was denied a
chaplin [sic]."  (Compl. at 3).   Additionally, Mr. Toliver alleges
that the "Department of Corrections has exhibited violations of the
Constitution  (Due  Process),"  explaining  that,  "upon  entry  in  a

---

will be cited as "Add." followed by the corresponding page number.

punitive segregation housing unit[,] [an] inmate's property (all of it) is taken from them and absolutely not vouchered[,] thus causing them to be missing, stolen, [or] misplaced (as my property was for several weeks).   Now all my property has been stolen -- I have nothing that I came into this housing unit with." (Add. at 2). Lastly, Mr. Toliver complains that "every inmate [in the punitive segregation unit] is only allowed 'one' phone call a day[.]  All this takes place without notice or any determination under due process[.]  [I]t's just taken away from each inmate who is placed in punitive segregation . . . and no notice [or] hearing is ever given . . . ." (Add. at 3).  Upon first filing his complaint, the plaintiff demanded only injunctive relief -- a transfer out of his housing unit -- as a remedy for his injuries.  (Compl. at 5).

On June 7, 2011, the Moving Defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that: (1) the action is moot because Mr. Toliver seeks only injunctive relief, which is not available as he is no longer in City custody; (2) the complaint fails to state a claim against PHS; (3) DOC is not a suable entity; and (4) the complaint fails to allege the personal involvement of any of the individually named defendants.  (Memorandum of Law in Support of Defendants' Motion to Dismiss at 4-8).

On July 14, 2011, Mr. Toliver submitted a motion to amend his

4

complaint along with a proposed amended complaint. (Amended Complaint dated July 14, 2011 ("Am. Compl.")). The amended complaint (1) adds the City of New York, Captain Garcia, Captain Dunbar, Assistant Deputy Warden Lombardi, and Phillip Keeplings of PHS as defendants;[2] (2) adds a section entitled "Explanation as to Why Defendants in this Action are Being Sued"; (4) adds claims for violations of substantive and procedural due process; (5) alleges that the defendants are responsible for deliberate indifference; and (6) indicates that Mr. Toliver now seeks damages. (Am. Compl. at 9-17). The amended complaint does not contain any additional facts concerning the plaintiff's claims.[3] (Am. Compl. at 12-17).

On August 5, 2011, the Moving Defendants filed a reply memorandum of law in which they argue, among other things, that the plaintiff (1) fails to state a claim against PHS or any of the individually named defendants in his complaint and proposed amended complaint; (2) fails to state a claim in connection with his allegations that he was denied access to a working typewriter or deprived of telephone privileges; and (3) cannot state a claim on

---

[2] It is assumed that the plaintiff has identified Captains Garcia and Dunbar and Assistant Deputy Warden Lombardi as the John and Jane Does named as defendants in his original complaint.

[3] Though the proposed amended complaint contains a section entitled "Additional Statement of Facts," the plaintiff does not actually plead additional facts; rather, he states the law upon which his claims are based. (Am. Compl. at 13-17).

behalf of other inmates.  (Reply Memorandum of Law in Further
Support of Defendants' Motion to Dismiss Plaintiff's Complaint and
in Partial Opposition to Plaintiff's Motion to Amend the Complaint
dated Aug. 5, 2011 ("Def. Reply") at 4-6).  The Moving Defendants
argue that the complaint should be dismissed and the motion to
amend denied except to the extent that the plaintiff alleges that
his constitutional rights were violated in connection with his loss
of property as a result of the City's purported practice of not
vouchering inmates' property upon their entry into the punitive
segregation housing unit.  (Def. Reply at 7).

     On September 16, 2011, Mr. Toliver submitted a letter to the
Court in which he acknowledged receipt of the defendants' reply
memorandum and requested permission to supplement his proposed
amended complaint with an additional "[e]xplanation as to why each
defendant is being sued."  (Plaintiff's Supplementary Amended
Complaint dated Sept. 28, 2011[4] ("Supp. Am. Compl.") at 1, 4-12).
In this supplement, Mr. Toliver first provides slightly more detail
concerning his lost property claim against the City, stating that
he "was literally stripped of all of [his] property, clothes,
shoes, food, [and] lots of other personal property [that was] taken
and never [] was vouchered for safekeeping." (Supp. Am. Compl. at

---

     [4] Mr. Toliver dates the documents September 28, 2011.
However, they were received by the Court on September 16, 2011.

5).  The plaintiff next explains that, on May 5, 2010, Captain Garcia "maliciously" transferred him to an "inopperable [sic] cell" with, among other problems, a nonfunctioning toilet flooded with feces which caused him to be sick. (Supp. Am. Compl. at 6). Mr. Toliver alleges that Captain Dunbar and Assistant Deputy Warden Lombardi are liable for their roles in the transfer because they refused his repeated requests to be moved to another cell, and further alleges that Captain Dunbar denied his many requests to receive medical treatment. (Supp. Am. Compl. at 7-8). Mr. Toliver explains that Phillip Keeplings, a mental health clinician in the punitive segregation unit at GRVC, refused his requests for mental health care following several assaults against the plaintiff that occurred on or around May 19 and 20, 2010, including one incident in which Mr. Toliver alleges to have been sodomized by a corrections officer. (Supp. Am. Compl. at 9-10). Finally, Warden Mulvey is alleged to be "liable and responsible" because, according to the plaintiff, he notified the warden of his many grievances and she did not take corrective action. (Supp. Am. Compl. at 11-12). Specifically, he alleges that "Warden Mulvey has never once interviewed a single person [or] interviewed me one single time [concerning] the floods[,] . . . the assaults[,] . . . the sodomy[,] . . . the stolen property[,] [or] the theft of my property . . . . I submitted grievances and complaints to Warden

7

Mulvey[.]  She was certainly put on notice[.]  She told me at one point[,] 'I got all your letters and complaints' and she kept walking by my cell without any additional assistance." (Supp. Am. Compl. at 11-12).

On December 2, 2011, the Moving Defendants responded to Mr. Toliver's supplementary amended complaint.  (Moving Defendants' Response to Supplementary Amended Complaint dated Dec. 2, 2011 ("Def. Resp.") at 1-4).  They maintain that the plaintiff continues to fail to state a claim against PHS, Commissioner Schriro, Chief Davis, and Warden Mulvey, and argue that he should be denied leave to amend his complaint to add Captain Garcia, Captain Dunbar, Assistant Deputy Warden Lombardi, and Phillip Keeplings because the allegations against these defendants are duplicative of claims asserted against them by the plaintiff in other actions.  (Def. Resp. at 3-4).  They remain unopposed to the plaintiff's motion to amend to add the City as a defendant.  (Def. Resp. at 4).  I will address the plaintiff's motion to amend his complaint before deciding the defendants' motion to dismiss.

<u>Discussion</u>

    A.   <u>Motion to Amend the Complaint</u>

        1.   <u>Standard for Amendment</u>

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).   Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998).   Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

Where, as here, a proposed amendment adds new parties, the propriety of amendment is governed by Rule 21 of the Federal Rules of Civil Procedure.   Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001).   That rule states that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21.   In deciding whether to permit joinder, courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting Fair

Housing Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004). Thus, joinder will be permitted absent undue delay, bad faith, prejudice, or futility.  Joinder may be denied as futile if the proposed pleading would not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Oneida Indian Nation of New York v. City of Sherill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005); Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000). As when considering a motion under Rule 12(b)(6), a court evaluating the futility of an amendment to a complaint must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Henneberry v. Sumitomo Corp. Of America, 532 F. Supp. 2d 523, 527 (S.D.N.Y. 2007).

Pro se complaints are held to less stringent standards than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79

(2d Cir. 1996)).  Even after <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937 (2009), which imposed heightened pleading standards for all complaints, <u>pro se</u> complaints are to be liberally construed.  <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a <u>pro se</u> complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. <u>Rodriquez v. Weprin</u>, 116 F.3d 62, 65 (2d Cir. 1997).

> 2.   Captain Garcia, Captain Dunbar, and Assistant Deputy Warden Lombardi

The defendants argue that Mr. Toliver should be denied leave to amend his complaint to add Captains Garcia and Dunbar and Assistant Deputy Warden Lombardi as defendants because "he is attempting to sue these defendants, not in connection with any claims within the scope of this action, but for claims relating to the conditions in his cell on and after May 5, 2010, which are the subject of a separate action . . . in which he also names these same individuals as defendants." (Def. Resp. at 3).  Indeed, the complaint in <u>Toliver v. Dept. of Corrections, NYC</u>, No. 10 Civ. 5807 (the "5807 Action"), names Captain Garcia, Captain Dunbar, and Assistant Deputy Warden Lombardi as defendants and asserts claims based on the plaintiff's detention in the "inoperable" cell occurring on or around May 5, 2010 described in his supplemental

11

amended complaint.  (Complaint at 3, No. 10 Civ. 5807, Doc. No. 2).
Thus, because the claims asserted against these defendants here are
duplicative of those asserted in the 5807 Action, the plaintiff's
motion to add these defendants in this action must be denied.  See
Curtis v. Citibank, N.A., 226 F.3d 133, 138-39 (2d Cir. 2000) ("As
part of its general power to administer its docket, a district
court may stay or dismiss a suit that is duplicative of another
federal court suit. . . . [P]laintiffs have no right to maintain
two actions on the same subject in the same court, against the same
defendant at the same time." (citing Colorado River Water
Conservation District v. United States, 424 U.S. 800, 817 (1976)
and Zerilli v. Evening News Association, 628 F.2d 217, 222 (D.C.
Cir. 1980))).

>    3.   Phillip Keeplings of PHS

Similarly, the plaintiff's motion to amend his complaint to
add Mr. Keeplings as a defendant must be denied, as he is also a
named defendant in another action predicated on the same facts
alleged in the plaintiff's supplemental amended complaint.  (Def.
Resp. at 4).   See Toliver v. P.H.S. Corp. and Mental
Health-Kepplinphillips, No. 10 Civ. 5355 (the "5355 Action").
Specifically, the 5355 Action complaint describes the alleged May
20, 2010 assault, alleges that "Mental Health was notified by
myself all to no avail. . . .  Mental Health and/or medical did

nothing about this sodomy or assault," and names Mr. Keeplings as a defendant.  (Complaint at 1, 3, No. 10 Civ. 5355, Doc. No. 2). Therefore, as the claims asserted against Mr. Keeplings here are duplicative of those asserted in the 5355 Action, the plaintiff's motion to add him as a defendant in this action must be denied. See Curtis, 226 F.3d at 138-39.

        4.  City of New York

    Mr. Toliver also seeks to add the City of New York as a defendant in this action, and the Moving Defendants do not oppose permitting him to do so.  (Am. Compl. at 2; Def. Reply at 7).  In order to prevail on a Section 1983 claim against the City of New York, the plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights.  Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978).  An "official policy" may be implemented through a "'policy statement, ordinance, regulation, or decision'" that is officially promulgated by a municipality's policy makers.  Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Monell, 436 U.S. at 690). A "custom," for the purposes of municipal liability, must be so entrenched and well-established as to constitute a practice with the force of law.  Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).  "[A] single incident of unconstitutional conduct by a non-policymaking employee" of the

City is insufficient to demonstrate a municipal policy or custom; rather, a systematic pattern of conduct must be shown to establish municipal liability under Section 1983.  Warheit v. City of New York, No. 02 Civ. 7345, 2006 WL 2381871, at *12 (S.D.N.Y. Aug. 15, 2006) (citing Davis v. City of New York, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002)).

In his complaint, Mr. Toliver alleges that when an inmate enters punitive segregation housing, DOC takes his property without vouchering it, which caused all of Mr. Toliver's property to be stolen.  (Add. at 2).  These allegations are sufficient to state a claim that the City maintains a policy, custom, or practice of not vouchering inmates' property upon their entry into the punitive segregation housing unit, and that the plaintiff was deprived of his property as a result.[5]

---

[5] In his supplementary amended complaint, Mr. Toliver explains that his "trial court attire" was among the items of his personal property that was lost, which resulted in his being "made to wear 100% '[o]range [p]ants' and '[o]range [s]hirt' with white letters that read: 'D.O.C.' and 'Prisoner.'"  (Supp. Am. Compl. at 5).  He further alleges that, "I was forced all the way through trial and court(s) appearances to wear D.O.C. issued 'orange' suit prison attire . . . despite my protests."  (Supp. Am. Compl. at 5).  Although he does not appear to be asserting a claim on the basis of these facts, such a claim would nonetheless be barred by Heck v. Humphrey, 512 U.S. 477 (1994), which precludes Section 1983 actions for monetary damages if success on such claims would necessarily call into question the validity of the underlying conviction and sentence.  Id. at 487.  Until a Section 1983 plaintiff has proven that his conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state

Accordingly, Mr. Toliver's motion to amend his complaint is granted to the extent he seeks to add the City of New York as a defendant; consequently, for purposes of the motion to dismiss, the amended complaint supersedes the original complaint.

B.   <u>Motion to Dismiss</u>

   1.   <u>Legal Standard for Dismissal</u>

When considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.   <u>Erickson</u>, 551 U.S. at 94; <u>Freedom Holdings Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004).   A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. <u>Iqbal</u>, 556 U.S. at __, 129 S. Ct. at 1949-50 (citing <u>Twombly</u>, 550 U.S. at 555).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"   <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 570).   Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the general

_____

tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus," the court must dismiss the claim.   <u>Id.</u> at 486-87.

pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

    2.  Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

    a.  New York City Department of Correction

As an initial matter, DOC is not a suable entity.  See, e.g., Renelique v. Doe, No. 99 Civ. 10425, 2003 WL 23023771, at *6 (S.D.N.Y. Dec. 29, 2003) ("[T]he overwhelming body of authority

16

holds that DOC is not a suable entity."). Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. As an agency within the meaning of the New York City Charter, DOC cannot be sued. <u>Antrobus v. Department of Corrections</u>, No. 07 Civ. 2076, 2009 WL 773277, at *3 (S.D.N.Y. March 24, 2009) ("[P]erforce of the . . . New York City Charter, DOC, an agency of the city of New York, lacks the capacity to be sued."). Thus, to the extent that Mr. Toliver asserts claims against DOC, they must be dismissed.

  b. <u>Commissioner Schriro and Chief Davis</u>

  Personal involvement by the defendant in any alleged constitutional violation is a prerequisite to an award of damages under Section 1983. <u>Hernandez v. Keane</u>, 341 F.3d 137, 144-45 (2d Cir. 2003); <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999). Therefore, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" <u>Harris v. Westchester County Department of Corrections</u>, No. 06 Civ. 2011,

2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)).  "A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he must be shown to have 'some personal responsibility.'"  Murray v. Koehler, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)).

Mr. Toliver fails to set forth the personal involvement of either Commissioner Schriro or Chief Davis in the incidents giving rise to his claims.  Aside from his bare allegation that they are "responsible for [their] deliberate indifference" (Am. Compl. at 17), the plaintiff does not otherwise mention these defendants in his complaint, proposed amended complaint, or supplemental amended complaint.  Thus, he has not adequately set forth a constitutional claim against these defendants, and his claims against them must be dismissed.

### c.  Supervising Warden Kathleen Mulvey

Mr. Toliver next alleges that Warden Mulvey violated his rights by failing to take action after he notified her of the loss of his property.[6]  The defendants contend that the plaintiff "has

---

[6] In his supplemental amended complaint, the plaintiff alleges that he notified Warden Mulvey of several of his grievances and complaints, and that she failed to take action on any of them. (Supp. Am. Compl. at 11-12).  However, only his allegations

18

not alleged that Warden Mulvey played any role in establishing the alleged municipal policy of not vouchering inmates' property upon entry to the punitive segregation housing unit, which he has alleged led to the loss of his property.  Thus, he has failed to allege her personal involvement in any alleged constitutional violation," thereby precluding a finding of liability under Section 1983.  (Def. Resp. at 4).

As the defendants acknowledge, a supervisory official may be found to have personal involvement in a constitutional violation if the official "created a policy or custom under which unconstitutional practices occurred," Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); however, this is merely one route to imposing supervisory liability under Section 1983.  Additionally, liability may attach to a supervisor's conduct where (1) the official directly participated in the violation; (2) the official, "'after being informed of the violation through a report or appeal, failed to remedy the wrong'"; (3) the official allowed the continuance of a policy or custom under which unconstitutional practices occurred; (4) the official

---

relating to the loss of his property are considered here, as the other grievances concern incidents and defendants that are the subject of other actions.  (See Section A (2)-(3), supra).

"'was grossly negligent in supervising subordinates'" who caused the unlawful condition or event; or (5) the official "'exhibited deliberate indifference [to the plaintiff's rights] by failing to act on information indicating that unconstitutional acts were occurring.'" Back, 365 F.3d at 127 (quoting Colon, 58 F.3d at 873); see Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); see also Plair v. City of New York, 789 F. Supp. 2d 459, 465 (S.D.N.Y. 2011) (holding that "the traditional [Second Circuit] categories of supervisory liability still apply" in deliberate indifference cases after Iqbal); Jackson v. Goord, 664 F. Supp. 2d 307, 324 & n.7 (S.D.N.Y. 2009) (same).

Here, Mr. Toliver alleges that he "submitted grievances and complaints to Warden Mulvey," and claims that "[s]he was certainly put on notice" of his grievances, as "[s]he told [him] at one point, 'I got all your letters and complaints.'" (Supp. Am. Compl. at 12). The plaintiff further alleges that, despite his complaints, the warden "never once interviewed a single person [or] interviewed [him] one single time [concerning] . . . the stolen property . . . [or] the theft of [his] property . . . ." (Supp. Am. Compl. at 11-12).

That the warden ignored the plaintiff's grievances is insufficient to impose Section 1983 liability, however, as personal involvement will be found only "where a supervisory official

receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).  Though courts in this Circuit are divided "regarding whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance," Garcia v. Watts, No. 08 Civ. 7778, 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) (collecting cases), the law is clear that a supervisor's mere "receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement," Harrison v. Fischer, No. 08-CV-1327, 2010 WL 2653629, at *4 (N.D.N.Y. June 7, 2010) (citing Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) and Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004)); see, e.g., Johnson, 234 F. Supp. 2d at 363 ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal quotation marks omitted) (collecting cases)); Tafari v. McCarthy, 714 F. Supp. 2d 317, 359 (N.D.N.Y. 2010) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official 'failed to remedy the violation after learning of it through a report or appeal' or

'allowed the custom or policy continue after learning of it.'" (quoting <u>Rivera v. Goord</u>, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000))). As Mr. Toliver makes no allegation that Warden Mulvey responded to his grievances or took any other action in regard to his complaints, he does not state a claim for personal involvement under Section 1983. Thus, his claim against the warden must be dismissed.

> d. <u>Prison Health Services</u>

Mr. Toliver also alleges that PHS violated his rights by denying him adequate medical and mental health care. "To establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994) (alteration in original) (internal quotation marks omitted). The test for deliberate indifference has both objective and subjective prongs. <u>Id.</u> First, the alleged deprivation must be objectively "'sufficiently serious.'" <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). "This standard contemplates a [showing by the prisoner that his medical need was] a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Lucas v. McCoy</u>, No. 10 Civ. 9611, 2011 WL 6005164, at *2 (S.D.N.Y. Nov. 30, 2011) (alteration in original) (internal quotation marks omitted). Second, the prisoner must show that the charged official acted

"with a sufficiently culpable state of mind," meaning that the "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Hathaway, 37 F.3d at 66 (citing Wilson, 501 U.S. at 298, and Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 66 (internal quotation marks omitted).

Mr. Toliver alleges that PHS staff "briskly walk[ed]" by his cell daily, including on days he was lying on his cell floor resulting from a back injury, and "ignored" his requests for treatment "most of the time."[7]   (Compl. at 3).   First, the plaintiff has failed to allege with any particularity that his medical needs -- presumably, those resulting from the unspecified injury to his back -- would pose an excessive risk to his health if he were denied services.   Even construing his complaint to allege that his back-related medical needs created such a "condition of urgency," however, he has failed to plead facts (a) identifying a

---

[7] In his pleadings concerning PHS, Mr. Toliver appears to assert claims on behalf of other inmates, which he cannot do. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause.   A person must be litigating an interest personal to him.").   Accordingly, only alleged violations of the plaintiff's rights are considered here.

responsible official (b) who acted with a sufficiently culpable state of mind.  In other words, Mr. Toliver has failed to show that any PHS staff member knew of his serious medical needs and intentionally disregarded them, fully aware that denying him medical services would create a "substantial risk of serious harm" to his health.  Thus, the plaintiff has failed to state a claim for deliberate indifference to a serious medical need, and his claim against PHS must be dismissed accordingly.

          e.   <u>Mr. Toliver's Remaining Claims</u>

Finally, Mr. Toliver claims that he was denied access to a working typewriter in the law library, denied telephone privileges upon entering punitive segregation, and denied access to a chaplain.  (Compl. at 3, 5).  However, as the plaintiff does not plead any facts indicating that any defendant was personally involved in or responsible for any of the alleged deprivations, these claims must be dismissed.

Even if Mr. Toliver were able to establish the requisite personal involvement, however, his claims would still fail to state a cause of action.  First, aside from the plaintiff's allegation that the only law library typewriter available to the approximately 100 inmates in his housing unit was "inoperable," he alleges no facts indicating that he suffered any actionable harm as a result. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351, 360 n.7 (1996) (holding

that, as "[c]ourts have no power to presume and remediate harm that has not been established," an inmate must therefore show "that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim" to establish a constitutional violation). Likewise, with respect to his claim that he was limited to one phone call per day while housed in the punitive segregation unit, Mr. Toliver has failed to allege that he was deprived of a constitutional right. See Henry v. Davis, No. 10 Civ. 7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel.") (collecting cases).   Lastly, Mr. Toliver appears to assert his denial-of-chaplain-services claim on behalf of another inmate, which is not permitted.   (See n.7, supra).   Therefore, these claims must be dismissed.

Conclusion

For the reasons stated above, I recommend that the plaintiff's motion to amend his complaint be granted to the extent he seeks to add the City of New York as a defendant and denied in all other respects, and that the defendants' motion to dismiss be granted, leaving a single claim against the City for its alleged policy of failing to voucher the property of inmates entering segregated housing.   Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and

25

6(d) of the Federal Rules of Civil Procedure, the parties shall
have fourteen (14) days from this date to file written objections
to this Report and Recommendation.  Such objections shall be filed
with the Clerk of Court, with extra copies delivered to the
chambers of the Honorable Loretta A. Preska, Chief Judge, Room
2220, and to the chambers of the undersigned, Room 1960, 500 Pearl
Street, New York, New York 10007.  Failure to file timely
objections will preclude appellate review.


                    Respectfully Submitted,


                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE.


Dated: New York, New York
       April 10, 2012


Copies mailed ths date to:

Michel Toliver
10-A-4565
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York  12589

Emily Sweet, Esq.
NYC Law Department, Office of the Corporation Counsel
350 Jay Street
Brooklyn, NY 11201


                              26