```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                         :   10 Civ. 6298 (LAP) (JCF)
                                        :
          Plaintiff,                    :        REPORT AND
                                        :        RECOMMENDATION
     - against -                        :
                                        :
DEPARTMENT OF CORRECTIONS,              :
COMMISSIONER OF THE DEPT., CHIEF        :
OF THE DEPT., WARDEN OF G.R.V.C.,       :
CAPTAIN OF HOUSING UNIT 7 x 3           :
TOUR, CAPTAIN OF HOUSING UNIT           :
3 x 11 TOUR, CAPTAIN OF HOUSING         :
UNIT 11 x 7 TOUR, P.H.S.                :
CORPORATION - PRISON HEALTH             :
SERVICES, FIRST DEPUTY WARDEN JOHN      :
AND JANE DOES ALL TOURS - 3,            :
D.O.C. LEGAL DIVISION,                  :
                                        :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE LORETTA A. PRESKA, CHIEF JUDGE:

Michel Toliver brings this action pro se under 42 U.S.C. § 1983, alleging various violations of his civil rights while detained at the George R. Vierno Center ("GRVC"), a facility operated by the New York City Department of Correction ("DOC") on Rikers Island.  On September 30, 2012, the Honorable Loretta A. Preska, U.S.D.J., dismissed all of the plaintiff's claims except for one.  Toliver v. Department of Corrections, No. 10 Civ. 6298, 2012 WL 4513435 (S.D.N.Y. Sept. 30, 2012).  The plaintiff's remaining claim is that the City of New York (the "City") maintains an unconstitutional policy, custom, or practice of not issuing vouchers for inmates' property upon their entry into the punitive segregation housing unit and, as a result, he was deprived of his property without due process of law. The City now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

1

Background[1]

On or about May 5, 2010, when Mr. Toliver was placed into the punitive segregation unit at GRVC, he was required to surrender his personal property, including most of his clothing, and was provided with an orange shirt and pants issued by DOC.  (Def. Rule 56.1 Statement, ¶¶ 1-2; Am. Compl., ¶ II(D); Additional Statement of Facts ("Add. Statement"), attached to Am. Compl., at 3).  His property was to be stored in "inmates' lockers [located] directly on the unit."  (Add. Statement at 4; Def. Rule 56.1 Statement, ¶ 3).  He did not receive a property voucher.  (Add. Statement at 3).

On or about May 12, 2010, when Mr. Toliver was scheduled to go to court, he learned from DOC staff that his property was missing. (Def. Rule 56.1 Statement, ¶ 4; Notice of Claim dated July 22, 2010 ("July 22 Notice"), attached as Exh. B to Carey Decl., at 1).  The plaintiff had dress clothes brought to the courthouse, which he wore for his court appearance.  (Add. Statement at 1-2). Afterwards, he was required to change back into the DOC-issued clothing, and at GVRC he was required to surrender his personal clothing so that it could be stored in a locker.  (Add. Statement at 2).

On July 29, 2010, the date of his next court appearance, Mr. Toliver learned that his personal property had again been lost.

---

[1] The following facts are undisputed unless otherwise noted and are drawn from the allegations in the Amended Complaint ("Am. Compl."); Defendant's Local Civil Rule 56.1 Statements of Material Facts Not in Dispute ("Def. Rule 56.1 Statement"); and the exhibits attached to the Declaration of Charles Carey dated July 9, 2013 ("Carey Decl.").

(Add. Statement at 2).  At the pretrial hearing on that day, he appeared in court wearing his DOC-issued orange clothing and carrying a sweatshirt, a pair of jeans, and a manila envelop. (Pretrial Hearing Transcript dated July 29, 2010 ("July 29 Tr."), attached as Exh E to Carey Decl., at 37).  Mr. Toliver informed the judge that his dress clothes had disappeared and that DOC had provided him with civilian clothing.  (July 29 Tr. at 38).  He was permitted to change before the trial commenced (July 29 Tr. at 73-74), and  during trial he was identified by a witness in court as wearing "a gray button down collared shirt" (Trial Transcript dated Aug. 2, 2010, attached as Exh. F to Carey Decl., at 151).  On August 4, 2010, according to the plaintiff, he appeared in court with "replacement clothing" provided to him by DOC because his personal clothing was "either stolen or mis-placed by D.O.C. staff -- a second time."  (Formal Complaint dated Aug. 4, 2010, attached as Exh. D to Carey Decl., at 1).

     According to the plaintiff, the DOC lost three pairs of jeans, four sweat suits, leather shoes, a suit, a dress shirt, a neck tie, a belt, a sweater, underwear, t-shirts, socks, shower slippers, and an earring, as well as his legal papers and pictures, worth in total $1,520.  (Letter of Michel Toliver dated Sept. 15, 2010, attached as Exh. G to Carey Decl.; Def. Rule 56.1 Statement, ¶ 15). He filed a Notice of Claim on July 22, 2010, regarding property that was lost on May 12, 2010 (Def. Rule 56.1 Statement, ¶ 14; July 22 Notice), and a Notice of Claim on July 25, 2010, for the earring (Notice of Claim dated July 25, 2010 ("July 25 Notice"), attached

as Exh. C to Carey Decl.).

Mr. Toliver claims that the City has an unconstitutional practice and policy of not issuing vouchers for inmates' property when they enter the punitive segregation unit at GRVC, resulting in many inmates losing their possessions. (Def. Rule 56.1 Statement, ¶ 17; Am. Compl., ¶ IV(A); Add. Statement at 3, 5-7). He argues that a implementing a voucher policy would deter DOC staff from "stealing, losing, [and] destroying" inmate property. (Add. Statement at 8; Def. Rule 56.1 Statement, ¶ 18).

Discussion

A.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A material fact is one that "'might affect the outcome of the suit under the governing law.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248). In assessing whether there is a genuine issue of material fact, "a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'" <u>Seeman v. Local 32B-32J, Service Employees Union</u>, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), following which the opposing party must "'come forward with specific facts showing that there is a genuine issue for trial,'" <u>Wrobel v. County of Erie</u>, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)). The parties can support their claims with discovery materials, stipulations, and affidavits, <u>see</u> Fed. R. Civ. P. 56(c)(1)(A); however, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted). Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment. <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (quoting <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 428 (2d Cir. 2001)).

Where a litigant is <u>pro</u> <u>se</u>, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994));

accord Belpasso v. Port Authority of New York and New Jersey, 400 F. App'x 600, 601 (2d Cir. 2010). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

B.    Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. Thus, in order to survive summary judgment, a plaintiff must proffer evidence that (1) the challenged conduct was attributable to a person acting "under color of state law," and (2) the conduct deprived the plaintiff of "rights, privileges or immunities secured by the Constitution or laws of the United States." Hayut v. State University of New York, 352 F.3d 733, 744 (2d Cir. 2003) (internal quotation marks omitted); accord Romero v. City of New York, 839 F. Supp. 2d 588, 622 (E.D.N.Y. 2013).

    C.    Due Process

    "To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property interest and was deprived of that interest without due process."  Galdamez v. Taylor, 329 F. App'x 300, 301 (2d Cir. 2009); see McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001).  As a general rule, due process entitles a person to notice and a hearing before he is deprived of a property interest.  See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985); DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) ("Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a . . . property interest.").  However, "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding."  DiBlasio, 344 F.3d at 302.

    "In the prison context, it is well-established that an allegation that an inmate's personal property was destroyed or lost by prison officials, negligently or even intentionally, does not offend the Due Process Clause provided that adequate post-deprivation remedies are available for redress of the matter."  Thompson v. Sadowski, Civ. Action No. 9:09-CV-00685, 2011 WL 7640125, at *9 (N.D.N.Y. Aug. 16, 2011) (citing Hudson v. Palmer, 468 U.S. 517, 533-34 (1984) (holding only post-deprivation remedy is required following intentional destruction of inmate's personal

property by prison employee because state is not "in a position to provide for predeprivation process")); see also Parratt v. Taylor, 451 U.S. 527, 541 (1981) (post-deprivation remedy sufficient to satisfy due process when inmate's property was lost by negligent, random, and unauthorized act of prison employee), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Volgelfang v. Capra, 889 F. Supp. 2d 489, 509 (S.D.N.Y. 2012) ("[T]he loss of a prisoner's property 'whether intentional or negligent -- will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available.'" (second set of internal quotation marks omitted) (quoting Davis v. New York, 311 F. App'x 397, 400 (2d Cir. 2009)).  This is because "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur" regardless of whether the deprivation is negligent or intentional.  Hudson, 468 U.S. at 533.  On the other hand, a post-deprivation remedy is insufficient to satisfy due process if "the deprivation was caused by high-ranking officials who had 'final authority over the decision-making process,'"  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 116 (quoting Dwyer v. Regan, 777 F.2d 825, 832 (2d Cir. 1985), or "'where the deprivation complained of results from the operation of established state procedures,'" Alexandre v. Cortes, 140 F.3d 406, 411 (2d Cir. 1998) (quoting Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)); see Icangelo v. Suffolk County Jail, No. 12 CV 5505,

2013 WL 357601, at *5 (E.D.N.Y. Jan. 28, 2013).

Here, the loss of Mr. Toliver's property, whether negligent or intentional, was the result of "'random and unauthorized' act[s] [of DOC staff], rather than an established state procedure or practice." Stevens v. City of New York, No. 12 Civ. 3808, 2013 WL 81327, at *2 (S.D.N.Y. Jan. 8, 2013). The deprivation was "random" because although "[the City] could anticipate that prison employees would occasionally lose property through negligence" or "predict that guards occasionally will harass or persecute prisoners they dislike" and intentionally lose their property, "it certainly c[ould ]not predict precisely when the loss w[ould] occur." Zinermon v. Burch, 494 U.S. 113, 136 (1990) (internal quotation marks omitted). Thus, the City was not in a position to provide a predeprivation process. Id. (noting that "[i]t would do no good for the State to have a rule telling its employees not to lose [inmate property] by mistake, and it borders on the absurd to suggest that a State must provide a hearing to determine whether or not a corrections officer should engage in negligent conduct" and that "a rule forbidding a prison guard to maliciously destroy a prisoner's property would not have done any good; it would be absurd to suggest that the State hold a hearing to determine whether a guard should engage in such conduct") (internal quotation marks omitted).

Moreover, the deprivation was "unauthorized" because like in "Parratt and Hudson, the state employees had no similar broad authority to deprive prisoners of their personal property, and no

similar duty to initiate (for persons unable to protect their own interests) the procedural safeguards required before deprivations occur." Id. at 138.  While Mr. Toliver characterizes the loss of his property as being pursuant to the City's "'No Voucher' policy" (Add. Statement at 5), he was not deprived of his property because of this alleged policy.  In fact, Mr. Toliver concedes that while implementing a voucher policy may function as a "deterrent," he "do[es]n't believe the voucher in it of itself would have prevailed [sic] the theft of and the prevention of the theft."  (Deposition of Michel Toliver dated April 19, 2013 ("Toliver Dep."), attached as Exh. A to Carey Decl., at 48).  He acknowledges that "a lot of property is still lost, even given [property] receipts, even after the receipts are given" and recalls that although some of his property was vouchered at the time of his arrest, it too was lost. (Toliver Dep. at 47-48).

Since the deprivation of the plaintiff's property was "random and unauthorized," he need only be afforded a post-deprivation remedy and "New York . . . affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." Davis, 311 F. App'x at 400 (internal quotation marks omitted); accord O'Diah v. Artus, 887 F. Supp. 2d 497, 501 (W.D.N.Y. 2012) ("The Second Circuit has held that New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates.") (internal quotation marks omitted); Reyes v. Koehler, 815 F. Supp. 109, 114-15 (S.D.N.Y. 1993) ("As New York provides such [an adequate post-deprivation]

remedy in § 9 of the Court of Claims Act, plaintiff states no constitutional claim . . . .").  Indeed, Mr. Toliver filed notices of claim with the City Comptroller with regard to his missing property (Toliver Dep. at 79-81; July 25 Notice; July 22 Notice), yet he chose not to pursue a property loss claim in New York state court and instead commenced this action.  (Toliver Dep. at 86).

    D.    <u>Municipal Liability</u>

Because the plaintiff has not alleged an underlying constitutional violation, the municipal liability claim necessarily fails.  See <u>MacFall v. City of Rochester</u>, 495 F. App'x 158, 161 (2d Cir. 2012) ("Given that plaintiffs failed to adequately allege an underlying constitutional violation, the district court did not err in dismissing their claim for municipal liability."); <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006) (holding district court need not reach issue of municipal liability where underlying constitutional claims were dismissed); <u>Parker v. City of Long Beach</u>, No. 11 CV 5412, 2013 WL 596624, at *11-12 (E.D.N.Y. Feb. 15, 2013) (granting summary judgment for defendant with respect to municipal liability claim because "[i]n light of the absence of an underlying constitutional violation, plaintiff cannot sustain a claim for municipal liability").

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Docket no. 86) be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days from this date to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Loretta A. Preska, Room 2220, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


Dated:      New York, New York
            November 13, 2013


Copies mailed this date to:

Michel Toliver
10-A-4565
Five Points Correctional Facility
State Route 96, P.O. Box 119
Romulus, NY 14541

Emily Sweet, Esq.
Charles Carey, Esq.
Assistant Corporation Counsel
100 Church St.
New York, NY 10007